FILED

NOV 1 2 2019

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>v.<br><br>LUIS CHAVAC-BOROR,<br><br>       Defendant. | Case No.: 19cr3424-MSB<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS** |

   Defendant Chavac-Boror is charged in a Superseding Information with violating 8 U.S.C. § 1325(a)(1) which provides, in relevant part, that Mr. Chavac-Boror, an alien, knowingly and intentionally attempted to enter the United States at any time or place other than as designated by immigration officers. Defendant moves to dismiss the information on three grounds: (1) Congress violated the non-delegation doctrine when it enacted the statute; (2) Section 1325(a)(1) is impermissibly vague in violation of the Due Process Clause; and (3) the information fails to allege the required elements of § 1325(a)(1).

/ / /

## A. Non-delegation Doctrine

Article 1, section 1 of the United States Constitution provides that "all legislative powers herein granted shall be vested in a Congress of the United States." The non-delegation doctrine generally forbids Congress from delegating to another branch of government "powers which are strictly and exclusively legislative." *Gundy v. United States*, 139 S. Ct. 2116, 2123 (2019) (quoting *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 42–43 (1825)). But the Constitution does not "deny[ ] to the Congress the necessary resources of flexibility and practicality [that enable it] to perform its function[s]." *Id.* (quoting *Yakus v. United States*, 321 U.S. 414, 425 (1944)). Congress's authority to confer substantial discretion on executive agencies to implement and enforce the laws is well established. *Mistretta v. United States*, 488 U.S. 361, 373-74 (1989) (collecting cases where delegation was upheld and noting the Supreme Court has struck down only two statutes for impermissible delegation and both occurred in 1935).

Congress generally cannot delegate away the inherently legislative task of determining what conduct should be punished as a crime. *United States v. Kozminski*, 487 U.S. 931, 949 (1988). The Supreme Court has held time and again, however, that "Congress simply cannot do its job absent an ability to delegate power under broad general directives." *Gundy*, 139 S.Ct at 2123. Congress can, therefore, permit an executive-branch official to fill in the details of a legislative scheme as long as Congress "lay[s] down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform." *Id.* At 2129 (quoting *J. W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928) (brackets in original)).

### 1. Analysis

Defendant argues that Section 1325(a) violates the nondelegation doctrine because it permits executive branch officials the discretion to determine what

2

constitutes a crime under Section 1325(a). Defendant interprets the statute to permit any "immigration officer[]" to designate the times and locations where entry into the United States is lawful. Defendant argues that this delegation is improper because Congress failed to provide any "intelligible principle" to guide and constrain that exercise of discretion. The Government opposes arguing that Defendant's reading of the doctrine is far too broad because Congress was not required to "spell out" for the Executive Agency how to determine where and when ports of entry are open.

The Court agrees with the Government's position. Defendant appears to conflate Congress's purpose in creating Section 1325(a) and the practical details of its implementation. Congress determined that there should be a proper location and procedure for an alien to seek admission to the United States. *See* 8 U.S.C. § 1225(a)(3) (requiring all applicants for admission to be inspected by immigration officers). Congress also established penalties for failing to follow those procedures. *See* 8 U.S.C. §§ 1321–1330. Section 1325(a) is one such provision. The details of where and when the ports of entry would be located was left to the executive agency responsible for staffing the facilities.

Defendant attempts to read into the statute a broader delegation than actually occurred by arguing that any individual immigration official can designate any piece of land as a place for entry. Not so. Congress requires that aliens seeking lawful entrance to the United States do so at a port of entry. *See United States v. Corrales*-Vasquez, 931 F.3d 944, 946 (9th Cir. 2019); *United States v.* Aldana, 878 F.3d 877, 882 (9th Cir. 2017). Ports of entry can only be designated or de-designated by the Secretary of Homeland Security subject to the Administrative Procedures Act. *See* 8 C.F.R. § 100.4(a). Ports of entry also necessarily include facilities, staffed by immigration officials that are set up to accept applications for admission. *Aldana*, 878 F.3d at 882. To interpret Section 1325(a) to permit a border patrol agent to designate a portion of the border fence "on a

1  whim" is in direct conflict with Congress's clear statutory scheme.

2  In support of his argument, Defendant cites the Supreme Court's decision in
3  *Touby*. *Touby v. United States*, 500 U.S. 160 (1991). At issue there was a statute that
4  allowed the Attorney General to temporarily designate a substance as a Schedule 1
5  Controlled Substance thereby making possession of that substance illegal. *Id.* at 165.
6  The Supreme Court in *Touby* held that the delegation was permissible, however,
7  because Congress provided the Attorney General factors to consider before designating
8  a new substance. Defendant argues the delegation at issue in Section 1325(a) is similar,
9  but Congress provided no guidance as to where ports of entry should be open and their
10 hours of operation.

11 The Court disagrees that the issue in *Touby* is similar to Section 1325(a). In *Touby*,
12 the Attorney General had the authority to make the legal possession of a substance
13 illegal. This is a discretionary act that expands the scope of criminal conduct under the
14 statute. Legislative guidance was required. The practical issues of where and when
15 ports of entry are open does not alter the scope of conduct considered criminal under
16 Section 1325(a). The type of conduct prohibited remains the same regardless of what
17 physical piece of ground a port of entry is on. Setting the location of ports of entry and
18 hours of operation only affects when and where an alien may lawfully comply with
19 Congress's directives. It does not change the scope of conduct that would subject an
20 alien to criminal liability.

21 The Government cites to the most recent Supreme Court case dealing with the
22 nondelegation doctrine to offer support for its position. In *Gundy*, the Court upheld a
23 delegation to the Attorney General to determine when it would be feasible to require
24 sex offenders convicted prior to the statute's enactment to register. In an analogous
25 delegation as here, Congress determined that the registration requirements applied to
26 pre-Act offenders but left the practical problems of implementation and when pre-Act
27

4

1  offenders would be required to register to the Attorney General.

2      The Court finds the type of delegation under Section 1325(a) to be analogous to
3  the delegation in *Gundy*. Congress determined that entering the United States outside a
4  port of entry was prohibited and properly and practically delegated authority to
5  implement Section 1325(a) to the Executive Branch, the agency that would be
6  responsible for staffing and operating the ports of entry. The Court therefore concludes
7  that the statute challenged by Defendant does not violate the nondelegation doctrine.

8      Accordingly, Defendant's Motion to Dismiss is DENIED.

9  **B. Due Process Void for Vagueness Challenge**

10     Defendant next argues that the Information must be dismissed because Section
11  1325(a)(1) is impermissibly vague in violation of the Due Process Clause. Defendant's
12  argument is essentially the same as the argument discussed above. Specifically,
13  Defendant contends Section 1325(a)(1) runs afoul of the Constitution because it allows
14  "immigration officers" to decide on a "whim" what places and times to designate for
15  entry. This, Defendant argues, at least permits arbitrary enforcement and subjects the
16  statute to a facial attack.

17     A statute can be impermissibly vague for either of two independent reasons.
18  First, if it fails to provide people of ordinary intelligence a reasonable opportunity to
19  understand what conduct it prohibits. *Hill v. Colorado*, 530 U.S. 703, 732 (2000).
20  Second, if it authorizes or even encourages arbitrary and discriminatory enforcement.
21  *Id.* But if "it is clear what the ordinance as a whole prohibits," *Grayned v. City of*
22  *Rockford*, 408 U.S. 104, 110 (1972), speculation about possible vagueness in
23  hypothetical situations not before the Court will not support a facial attack on a statute
24  when it is surely valid "in the vast majority of its intended applications." *Hill*, 530 U.S. at
25  733 (quoting *United States v. Raines*, 362 U.S. 17, 23 (1960)).

26     As the Government points out, Defendant is charged with "attempting" to enter
27

5

the United States at a location other than as designated.  Consequently, the Government argues that how the area was designated is irrelevant to this prosecution. The Court agrees.

Defendant's argument that the statute is impermissibly vague because any "immigration officer" can designate any piece of land to be a port of entry is inconsistent with the overall statutory scheme.  Reading Section 1325(a) in a vacuum may lead one to that conclusion.  But it is a basic canon of statutory interpretation that a statute must be read in its context and with a view to its place in the overall statutory scheme. *Corrales*-Vazquez, 931 F.3d at 949.  Ports of entry are identified by federal regulation. *See* 8 C.F.R. § 235.1 and § 100.4(a).  Ports of entry necessarily require facilities where immigration officers can accept applications for admission from aliens. *See Aldana*, 878 F.3d at 882.  Moreover, the process to designate a port of entry requires formal action by the Secretary of Homeland Security. *See, e.g.*, Opening of Boquillas Border Crossing and Update to the Class B Port of Entry, 77 Fed. Reg. 76346-01, 2012 WL 6707619 (2012) (providing notice of a proposed rule to create a border crossing in Big Bend National Park).

Given the formal procedures required to designate and de-designate a port of entry, and Congress's determination that a port of entry is the only place an alien may lawfully seek admission, the Court finds that Section 1325(a)(1) is surely valid in the vast majority, if not all, of its intended applications and Defendant's argument is insufficient to support a facial attack.

Accordingly, Defendant's Motion to Dismiss is **DENIED**.

### C. Elements of § 1325(a)(1)

Defendant argues the information must be dismissed because it fails to allege the elements of § 1325(a)(1). Defendant identifies an element that the Government failed to charge: that Defendant knew he was an alien.

6

**Parties' Contentions.**

Defendant argues that a recent Supreme Court decision requires the Information to be dismissed because the Government failed to allege that he "knew he was an alien" at the time of the alleged offense. *See generally Rehaif v. United States*, 139 S.Ct. 2191 (2019). *Rehaif* involved a prosecution under 18 U.S.C. § 922(g) for possession of a firearm by an "alien . . . unlawfully in the United States." *Id.* at 2194. The Supreme Court held that because only a "knowing violation" of the statute constituted a crime, the Government was required to prove both that the defendant knew he possessed a firearm and that he knew his own status. *Id.*

The Government disagrees arguing that *Rehaif* is inapplicable because it turned on the statutory construction of the firearms statute. The Government also argues the underlying policy concerns at issue in *Rehaif* are markedly different from this case, further making *Rehaif* inapplicable.

**1. Legal Standard**

A charging document must include the "essential facts constituting the offense charged[.]" FED. R. CRIM. P. 7(c)(1). A charging document "that tracks the words of the statute violated is generally sufficient" to allege the elements of an offense, but "implied necessary elements, not present in the statutory language" must be included. *United States v. Jackson*, 72 F.3d 1370, 1380 (9th Cir. 1995).

Whether a criminal statute that is silent as to *mens rea* requires the Government to prove that the defendant acted knowingly is a question of Congressional intent. *Rehaif*, 139 S. Ct. at 2195. To determine Congress's intent, courts begin with the "longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state regarding 'each of the statutory elements that criminalize otherwise innocent conduct.'" *Id.* (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994)). The presumption applies even when Congress does

1  not specify any scienter in the statutory text, but "applies with equal or greater force
2  when Congress includes a general scienter provision in the statute itself." *Id.*

3      **a. *Rehaif***

4      The defendant in *Rehaif* was charged with violating 18 U.S.C. § 922(g), which bars
5  certain persons, including aliens who are "illegally or unlawfully in the United States,"
6  from possessing firearms. A separate provision of Title 18 provides that anyone who
7  "knowingly violates" section 922(g) is subject to fine or imprisonment for up to 10 years.
8  18 U.S.C. § 924(a)(2).

9      Read together, sections 922(g) and 924(a)(2) explicitly provide that only a
10 "knowing" violation of the statute will constitute a criminal act. The issue before the
11 Supreme Court was therefore limited to the scope of that knowledge requirement. It
12 was undisputed that the Government must prove that the defendant knew he
13 possessed a firearm. The Court limited its inquiry as to whether the Government must
14 also prove that the defendant knew he was an alien "unlawfully in the United States."
15 *Rehaif*, 139 S. Ct. at 2194.

16     The Supreme Court held that applying the express scienter requirement to the
17 defendant's status was consistent with the statutory construction of §§ 922(g) and
18 924(a)(2). *Id.* The Court also found that application of the knowledge requirement to
19 the defendant's status furthered the underlying goal of the Court to "help[ ] separate
20 wrongful from innocent acts." *Id.* at 2197.

21     The Court explained that, "[a]ssuming compliance with ordinary licensing
22 requirements, the possession of a gun can be entirely innocent." *Id.* It was only the
23 defendant's status as an "alien . . . unlawfully in the United States" that converted his
24 conduct into a criminal act. *Id.* Specifically, the Court found that defendant's status was
25 the "crucial element" that made his conduct unlawful. *Id.* The Court further noted that
26 "[w]ithout knowledge of that status, the defendant may well lack the intent needed to
27

8

1 make his behavior wrongful." *Id.*

2 **2. Analysis**

3 **a. Relevant Status**

4 Defendant argues that "just as in *Rehaif*, his status as an alien is what separates

5 lawful from unlawful behavior." Defendant's argument fails to make an important

6 distinction between the relevant status at issue in *Rehaif*, and his own status. In *Rehaif*,

7 the defendant's relevant status was that he was an alien "unlawfully in the United

8 States." Here, at issue is Defendant's status as an "alien."

9 Contrary to Defendant's argument, Rehaif's violation of § 922(g) did not turn on

10 his status as an alien. An "alien" is any person not a citizen or national of the United

11 States. 8 U.S.C. § 1101(a)(3). Section 922(g) does not prohibit an alien who is lawfully

12 present from possessing a firearm. *See* 18 U.S.C. § 922(g)(5) ("It shall be unlawful for

13 any person . . . who, being an alien, is illegally or unlawfully in the United States). The

14 Supreme Court in *Rehaif* held that the Government must prove Rehaif knew he fell into

15 the relevant status group that made his conduct unlawful. Knowing whether or not he

16 was an alien would not have put Rehaif on notice that he was violating Section 922(g).

17 The outcome determinative factor was whether or not Rehaif knew he was "unlawfully

18 in the United States."

19 Section 1325 does not require proof that the defendant was unlawfully in the

20 United States. The Court further notes that Defendant is only charged with attempted

21 unlawful entry. On that basis, the Court concludes that the rationale in *Rehaif* is not

22 directly applicable to a prosecution under § 1325 and does not require the Government

23 to allege or prove that Defendant knew he was an alien.

24 In *Rehaif*, the Supreme Court concluded that but for defendant's status, the

25 possession of a firearm could have been "entirely innocent." *Rehaif*, 139 S. Ct. at 2197.

26 The defendant's status was the "crucial element" that made his conduct unlawful. *Id.*

27

9

1  Here, however, Defendant's conduct would have violated the law regardless of his

2  alienage. His alleged conduct in attempting to enter the United States at a non-

3  designated location was not "entirely innocent." *See id.* On that basis, the Court further

4  finds that the analysis in *Rehaif* is not applicable. For the reasons stated herein,

5  Defendant's Motion to Dismiss is **DENIED**.

6

7  **IT IS SO ORDERED.**

8  Dated: November 12, 2019

9  MICHAEL S. BERG

10  U.S. Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

19CR3424-MSB